UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO._____

CDM       Smith       Inc.,       a
Massachusetts corporation,

        Plaintiff,

v.

ATKINS       NORTH       AMERICA,
INC., a Florida corporation,

        Defendant.
_____/

## **COMPLAINT**

    1.    Plaintiff, CDM Smith Inc ("CDM Smith") is a corporation incorporated under the laws of the state of Massachusetts having its principal place of business in the state of Massachusetts.

    2.    On December 9, 2011, Camp Dress & McKee, Inc. amended its Articles of Incorporation to change its name to CDM Smith, Inc.

    3.    CDM Smith is licensed by the state of Florida as an engineering firm.

    4.    CDM Smith is engaged in, among other things, the business of designing, engineering, and providing professional engineering services for potable water treatment facilities that draw water from natural raw water sources and processing it to meet federal, state and local drinking water standards.

5.      Upon information and belief, on or about January 31, 2011, Post, Buckley, Schuh & Jerrigan, Inc. amended its Articles of Incorporation to change its name to Atkins North America, Inc., effective on April 1, 2011.

6.      Upon information and belief, Defendant, Atkins North America, Inc. ("Atkins") is a corporation incorporated under the laws of the state of Florida having its principal place of business in the state of Florida.

7.      Upon information and belief, Atkins is engaged in, among other things, the business of designing, engineers and providing professional engineering services for potable water treatment facilities.

8.      Upon information and belief, Atkins is licensed by the state of Florida as an engineering firm.

**Jurisdiction and Venue**

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.     Pursuant to 28 U.S.C. §1391(a)(2), venue lies in the Southern District of Florida because a substantial part of the events, breaches, errors and omissions giving rise to the claims occurred in this District and because the property that is the subject of the action, the Hood Road Membrane Water Treatment Plant, is located in this District.

2

**<u>Facts Common to All Counts</u>**

11.     This action stems from the design and construction for the conversion of the Hood Road Water Treatment Plant from a lime softening treatment facility to a reverse osmosis facility (the "Project").

12.     The Project is located in Palm Beach County, Florida.  The Project consisted the Membrane Process and Administration Building, the High Service Pump Building, Chemical Storage structures, above ground Fuel Tanks, the Concentrate Booster Pump Station, and the Degasifier-Clearwell Building.

13.     On November 1, 2006, CDM Smith entered into an agreement with Seacoast Utility Authority ("SUA" or "Owner") to perform preliminary professional engineering services for the conversion of the Hood Road Water Treatment Plant. ("Preliminary Design Agreement").   Under the terms of the Preliminary Design Agreement, CDM Smith was to provide the Owner with Pilot Testing and a Preliminary Design Report.

14.     On March 17, 2007, CDM Smith entered into an agreement with Atkins to provide Architectural, HVAC, Plumbing and Structural Engineering services for the preliminary design of the Project. ("Preliminary Design Subconsultant Agreement.") A true and correct copy of the Preliminary Design Subconsultant Agreement is attached hereto as Exhibit "A".

15.     On or about May 18, 2007, Atkins provided CDM Smith with a written narrative of the Structural design for incorporation into the Preliminary Design Report. The narrative prepared by Atkins included the following provisions:

3

A. 4.8.2.2 "Structural Design Standards," which included, "Environmental Engineering Concrete Structures, ACI 350-R Latest Edition."

B. 4.8.3 "Design Loads," which provided that, "[a]ll Structural requirements shall be based on applicable Building Codes and Standards….  In addition, complete signed and sealed structural design calculations shall be submitted for Building Department review."

C. 4.8.4.6 "Reinforced Concrete," which included references to, "ACI 350R— Latest Edition Environmental Engineering Concrete Structures," "Select concrete materials and mixture proportions in accordance with provisions of ACI 301… except as recommended in ACI 350R-Latest Edition," and "Reinforcing steel… Minimum shrinkage and temperature reinforcement-Per ACI 318 or ACI 350 as applicable."

D. "The current serviceability requirements of ACI 350R-Latest Edition as applicable to sanitary structures shall be applied to control calculated deflections and crack width."

E. "Maximum length between shrinkage-dissipating joints (i.e. construction, contraction or expansion joints) per design requirements of ACI 350."

F. "Concrete cover for reinforcement per ACI 318 or ACI 350 as applicable."

16.     In accordance with the Preliminary Design Agreement, CDM Smith produced the "Preliminary Design Report for the Hood Road Water Treatment Plant Membrane Conversion" dated October, 2007. The Preliminary Design Report incorporated the Structural narrative prepared by Atkins.

4

17.     On October 11, 2007, CDM Smith entered into an agreement with SUA to provide the final design for the Project.

18.     On December 5, 2007, CDM Smith entered into an agreement with Atkins for Atkins to provide the final design, permitting and bidding services for the architectural, structural, HVAC, plumbing and fire protection portion of the Project ("Final Design Subconsultant Agreement").   A true and correct copy of the Final Design Subconsultant agreement is attached hereto as Exhibit "B".

19.     The Final Design Subconsultant Agreement required that Atkins' scope of services be performed in accordance with the Preliminary Design Report.

20.     Atkins agreed in the Final Design Subconsultant Agreement that its Structural engineering of the Degasifier-Clearwell Building, and other structures, would be based upon applicable building codes.

21.     In addition, Atkins agreed that a) its services would be as defined in "National Practice Guidelines for the Structural Engineer of Record" published by the Coalition of American Structural Engineers, and b) its Structural drawings would be sealed by a structural engineer licensed in the State of Florida.

22.     On or about October 28, 2009, CDM Smith entered into contract with the SUA to provide engineering services during construction (the "Engineering Service During Construction Agreement").

23.     Atkins provided CDM Smith with sealed Structural Drawings, as well as specifications, for the concrete work, for incorporation into the final design documents.

5

24.     On or about October 7, 2009, Reynolds, Inc. was awarded a contract by SUA to construct the Project in accordance with the design documents, including the final Structural design provided by Atkins.

25.     Reynolds was issued a Notice to Proceed with construction of the Project on or about November 16, 2009, which was also the effective date of the contract between SUA and Reynolds.   Under the terms of the construction contract between SUA and Reynolds, Reynolds was required to achieve Substantial Completion of its work no later than February 12, 2003.

26.     On or about July 28, 2010, SUA and Reynolds entered into Change Order No. 8, which adjusted the Substantial Completion date of the construction contract to March 4, 2013.  Change Order No. 8 resolved all known claims of Reynolds against SUA through July 19, 2010.

27.     Upon information and belief, by August of 2010, Reynolds had constructed the sump portion of the Clearwell-Degasifier Building and performed a hydrostatic test of the concrete walls so that it could proceed with backfilling that part of the structure.

28.     The hydrostatic test revealed cracks and leaks in the sump portion of the Degasifier-Clearwell Building.  Reynolds initially believed that the cracks were due to the method and manner of construction, and repaired the cracks by epoxy injection.

29.     On or about September 7, 2010, CDM Smith requested that Atkins provide the original design calculations for the Degasifier-Clearwell Building  so that CDM Smith could evaluate them and determine whether the structural design was sufficient to meet the design parameters of the Project.

30.    On or about September 8, 2010, during a conference call between CDM Smith and Atkins, Atkins advised that it could not locate the original design calculations for the Degasifier-Clearwell Building , and that Atkins would have to reconstruct them.

31.    On September 10, 2010, Reynolds was directed to stop work by CDM Smith on the Degasifier-Clearwell Building  pending potential structural design changes.

32.    On or about September 10, 2010, Atkins provided the reconstructed design calculations to CDM Smith.  The reconstructed design calculations were hand written.

33.    On September 14, 2010, CDM Smith provided comments to Atkins' reconstructed design calculations.

34.    In response to CDM Smith's comments, Atkins provided two revised structural drawings for the Degasifier-Clearwell Building  and more than 100 pages of structural calculations.

35.    Based upon Atkins' response of providing a new structural design, CDM Smith concluded that Atkins' concurred with CDM Smith's suspicion that the cause of the cracks and leaks in the Degasifier-Clearwell Building  sump concrete was the inadequate design of the concrete structure.

36.    CDM Smith and Atkins then began a series of exchanges wherein CDM Smith would comment on Atkins' proposed redesign, and Atkins would modify the design as it deemed appropriate.

37.     On or about September 27, 2010, SUA hired an independent engineer, Kimley-Horn and Associates, Inc. ("KHA"), to review the structural design of the Degasifier-Clearwell Building  and the proposed redesign.

38.     On September 28, 2010, KHA provided comments on Atkins's proposed redesign of the Degasifier-Clearwell Building .

39.     On October 6, 2010, Reynolds provided comments on Atkins' proposed redesign, including suggestions on how to reduce the costs of constructing the redesigned Degasifier-Clearwell Building .

40.     On or about October 11, 2010, Atkins provided a revised set of drawings based upon new design calculations which included an Environmental Durability Factor as required by ACI 350-06.  Similarly, the calculations also did not rely upon the passive soil resistance to support the clearwell.

41.     Based upon the October 11, 2010 drawings, Reynolds submitted a cost proposal on or about October 20, 2010 of approximately $881,000 to modify the newly constructed sump portion of the clearwell, and to construct the remainder of the clearwell in accordance with the revised design.  In addition, the proposed change order included costs associated with delay to the Project as a result of Atkin's improper structural design of the clearwell.

42.     During a telephone conference between CDM Smith and Atkins on October 21, 2010, Jeff Warmington and Larry Levins of Atkins acknowledged that the original design of the Degasifier-Clearwell Building structure was defective, and that Atkins would be responsible for the great majority of the costs.

8

43.     Based upon its recognition of liability for the improper design, Atkins requested that it be allowed to take the lead in reviewing and negotiating any claims for additional compensation by Reynolds.   Atkins also stated that it would review Reynolds proposal to determine first costs versus remedial costs as that issue related to negotiations with the Owner.   Atkins' suggested that the negotiations with the Owner would be whether Atkins was "85%" or "95%" responsible for the additional costs, for example.

44.     On or about October 26, 2010, Atkins advised CDM Smith that it would not review Reynolds' proposal in its entirety, and took the position that the original structural design was not deficient except for its failure to include control joints and injector seal in the original design.   On or about October 29, 2010, Atkins provided another design, which utilized: a) the passive resistance of the soil against the tank, b) different load factors than those required by ACI 350-06, and c) less concrete cover over the reinforcing steel for purposes of calculating strength.   This design did not include the Environmental Durability Factor required by ACI 350-06. Atkins asserted that this alternate design was sufficient, and a less expensive correction of its original design error.

45.     Atkins' proposed designs of October 11, 2010 and October 29, 2010, are both an acknowledgement that Atkins' original structural design for the Degasifier-Clearwell Building was deficient, and an admission that the construction of the Degasifier-Clearwell Building  could not continue without modifying the structural design.

9

46.     In an attempt to resolve what design criteria, and therefore, what design, would be acceptable, a meeting was held on November 11, 2010. Representatives of SUA, Atkins, CDM Smith and KHA were in attendance.

47.     At the meeting, CDM Smith and KHA opined that the Degasifier-Clearwell Building had to be designed in accordance with the requirements of ACI-350.  Additional deficiencies in Atkins' design were identified and Atkins agreed to supply additional calculations to support its proposed redesign dated October 29, 2010.  SUA informed CDM Smith and Atkins that KHA had to approve of Atkins' redesign before CDM Smith and Atkins could proceed with implementing the redesign.

48.     On November 15, 2010, SUA notified CDM Smith and Atkins that it expected assurances that SUA would, "be indemnified against all related contractor and engineering costs, including but not limited to both engineering design and extended services during construction."  SUA continued, "the question is no longer whether such indemnification will be provided—only the time and format are presently open for discussion."

49.     On November 17, 2010, Atkins advised CDM Smith that it would not agree to indemnify SUA as had been demanded.

50.     On November 24, 2010, CDM Smith notified Atkins that the Preliminary Design Report required the design to meet ACI 350-06, and that the redesign of the Degasifier-Clearwell Building  had to meet ACI 350-06.  CDM Smith further notified Atkins that it would be responsible for all costs that CDM Smith incurred, and all claims that CDM Smith might be subjected to, as a result of Atkins' improper design of the

10

Degasifier-Clearwell Building .  Finally, CDM Smith required that Atkins provide a design that met ACI 350-06 by no later than December 3, 2010, or CDM Smith would perform the design itself.

51.    On December 1, 2010, Atkins advised CDM Smith that, "[s]ince these drawings [the drawings dated October 11, 2010] satisfy all of CDM Smith and Seacoast's requests, PBS&J [Atkins] authorizes CDM Smith to expeditiously permit and issue these drawings for Construction."   Atkins then concluded, "we will continue an analysis of the Contractor's $881,000 change order request to identify first-cost components, and to validate overall cost."

52.    CDM Smith understood Atkins' December 1, 2010 letter to be an admission that the original structural design was deficient, that Atkins was agreeing to design the structure in accordance with ACI 350-06, and that the only issue in dispute would be the amount that Atkins would be responsible for as a result of the Degasifier-Clearwell Building  design deficiency.

53.    On December 2, 2010, CDM Smith invited Atkins to participate in a meeting on December 6, 2010, with SUA and Reynolds to discuss the overall cost of Reynolds' change order to implement the redesign, as well as to identify the first order cost components of the redesign.

54.    On December 3, 2010, CDM Smith issued a letter to Reynolds requesting that Reynolds apply for a building permit modification based upon the October 11, 2010 design.

11

55.     On December 3, 2010, SUA reiterated to CDM Smith that neither CDM Smith nor Reynolds could proceed with a remedial plan to correct the Degasifier-Clearwell Building  until KHA comments were fully and satisfactorily addressed.

56.     On December 6, 2010, SUA asserted a formal claim against CDM Smith for all costs it would incur associated with the defective design, including any costs claimed by the Contractor to construct the Degasifier-Clearwell Building  in accordance with a revised design, the cost of Kimley-Horn's independent review and analysis, and all delay costs incurred on the Project.

57.     On December 15, 2010, Atkins provided a revised design and supporting calculations based upon the October 11, 2010 redesign to CDM Smith, SUA and KHA.

58.     On December 20, 2010, after reviewing KHA's and CDM Smith's comments to Atkins redesign, SUA advised CDM Smith of the following,

> By the way, if you are wondering when I will stop nagging you about this, there are several answers to that question.  The one that leaps immediately to mind is that the nagging will stop on the date I receive your written confirmation that Seacoast will be fully and unequivocally indemnified against all costs, direct and consequential, including but not limited to engineering, contractor, and legal, arising from or related to the Hood Road Membrane Water Treatment Plant clearwell/degasifier structural design deficiencies.

59.     On January 11, 2011, CDM Smith advised Atkins that its most recent design was not consistent with the 3-D model analysis provided by Atkins; therefore, KHA would not approve the design until several additional corrections were made.

60.     On January 26, 2011, CDM Smith provided responses to comments that KHA made on January 25, 2011, based upon conversations between CDM Smith and

Atkins, to the then current design proposed by Atkins.  Atkins' comments were generally that it would comply with the changes requested by KHA.

61.     On or about February 10, 2011, revised drawings that were acceptable to SUA, CDM Smith, Atkins and KHA were issued by Atkins.

62.     In addition to the proposed designs and reviews set forth above that were prepared by Atkins, CDM Smith and KHA, there were several additional designs, reviews and comments that were exchanged among the entities between November of 2010 and February of 2011.

63.     On February 11, 2011, CDM Smith advised Atkins, "[n]ow that we have completed the design of the Degasifier-Clearwell Building  and are negotiating with the contractor to finalize the change order, we will need to negotiate the 'First Order Costs' with SUA.  We would like for [Atkins] to analyze the change order and provide an analysis of the first order costs that should be borne by SUA."

64.     On February 14, 2011, Reynolds submitted a revised proposal (RFC 41 Rev. C) to incorporate the design changes to the Degasifier-Clearwell Building , as well as for the costs associated with the delay to the project.   RFC 41 C was for $1,015,374.29, and 188 calendars of additional time.

65.     On or about February 15, 2011, a Work Change Directive (WCD) was issued to Reynolds in the amount of $15,000 based upon Atkins' revised drawings dated February 10, 2011.  On or about February 16, 2011 Work Change Directive Supplement WCD 6.1 was issued to Reynolds in the amount of $165,000 to allow

13

Reynolds to resume construction of the Degasifier-Clearwell Building while the final pricing for the change order was resolved.

66.     On February 18, 2011, Reynolds, SUA, CDM Smith and Atkins met to review Reynolds' RFC 41 C.  In order to streamline the process, the parties determined what items they could agree upon, and what was in dispute.  Atkins agreed in principle that of the 188 calendar days of delay claimed by Reynolds, Reynolds was entitled to 151 calendar days, but then added a caveat which then negated its agreement.

67.     Atkins and CDM Smith also questioned some of the additional costs estimated by Reynolds for both the additional work, and the damages associated with the delay.

68.     On February 22, 2011, Reynolds submitted RFC 41, Rev. 5, in the amount of $833,090.31, and 178 days of additional time, based upon the critique of the claims, and eventually an agreement was reached between CDM Smith, SUA and Reynolds to compromise on the claims in order to avoid a protracted dispute.

69.     On February 23, 2011, CDM Smith and Atkins held a conference call to discuss Reynolds' RFC 41, Rev. 5.  Atkins agreed to complete its analysis of Reynolds' claim, and provide an evaluation of what costs Atkins believed were first order costs, and what costs it disputed.  CDM Smith advised Atkins that SUA was basing its evaluation of first order costs on a comparison between what SUA would have paid for a, "good design" versus what SUA had to pay for the actual design.  In addition, CDM Smith advised that it was going to prepare its own rough analysis of first order costs.

14

70.     Subsequent to the February 23, 2011 conference call, Atkins failed to produce its evaluation of first order costs for CDM Smith to use in negotiations with SUA.

71.     Atkins refused to agree to indemnify either SUA or CDM Smith for the costs incurred as a result of the improper design of the Degasifier-Clearwell Building .

72.     In April of 2011, SUA and CDM Smith negotiated a resolution to SUA's claims against CDM Smith related to the improper design of the Degasifier-Clearwell Building .  SUA sought to be indemnified for the additional costs it was required to pay Reynolds and KHA as a result of the improper design of the Degasifier-Clearwell Building .

73.     CDM Smith and SUA eventually agreed that SUA would be responsible for $191,885 in first order costs, and that CDM Smith would indemnify SUA for the balance of Reynolds' additional costs.  In addition, CDM Smith agreed to be responsible for one-half of KHA's fees, for an additional $29,982.

74.     On April 20, 2011, SUA and CDM Smith entered into a settlement agreement wherein CDM Smith agreed to credit SUA $671,187.31 from its Construction Administration fee.

75.     On June 10, 2011, CDM Smith submitted another demand for indemnification from Atkins, in which it demanded indemnification for the $671,187.31 credit to SUA, plus $93,890 in engineering costs incurred by CDM Smith personnel, as well as an estimated $378,000 for additional construction administration costs that CDM

15

Smith has or will incur due to the 178 day delay to the completion of the Project caused by the improper design of the Degasifier-Clearwell Building .

76.    Atkins has refused to indemnify CDM Smith for the claims and damages arising out of Atkins' improper design.

77.    All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

## COUNT I - BREACH OF CONTRACT

Plaintiff re-alleges paragraphs 1 through 77, above as if fully set forth herein and further alleges:

78.    Pursuant to the Final Design Subconsultant Agreement, Atkins had a duty to:

A.  Design the Degasifier-Clearwell Building -Degasifier building in accordance with applicable codes, the Preliminary Design Report, and within the standard of care of the industry;

B.  Prepare plans specifications for contractors to rely upon in performing the Work to construction the Project;

C.  Properly design the Degasifier-Clearwell Building;

D.  Provide construction administration services as required; and

E.  Professionally and objectively carry out is contractual obligations.

10104692.1

79.    Atkins breached its duty to prepare adequate and accurate plans and specifications from which a contractor could properly construct the Degasifier-Clearwell Building .

80.    Atkins breached its duty to design the Degasifier-Clearwell Building  in accordance with applicable codes, the Preliminary Design Report, and within the standard of care of the industry.

81.    Atkins breached its duty to properly design the Degasifier-Clearwell Building, and further breached its duty to provide construction administration services by failing to timely and properly correct its improper design of the Degasifier-Clearwell Building.

82.    As a result of the above listed breaches of contract, CDM Smith was damaged in excess of $1,000,000, the exact amount to be proven at trial.

WHEREFORE, Plaintiff, CDM Smith, Inc. prays that this Court enter judgment against Defendant, Atkins North America, Inc. for the principal amount owing, plus interest and court costs.

## COUNT II – CONTRACTUAL INDEMNITY

Plaintiff re-alleges paragraphs 1 through 77, above as if fully set forth herein and further alleges:

83.    Pursuant to Section 6.4.3 of the Final Design Subconsultant Agreement,

SUBCONTRACTOR shall indemnify and save harmless and defend the OWNER, ENGINEER, its agents, servants and employees from and against any claim, demand or cause of action of every name or nature arising out of the error, omission or negligent act of the SUBCONTRACTOR, its subcontractors, agents, servants or employees in

17

the performance of services under this Agreement.  The indemnification provided by this Article 6.4.3 shall in no way be limited by the minimum required insurance identified above.

84.     On repeated occasions, SUA and CDM Smith requested that Atkins indemnify SUA and CDM Smith from Reynolds' and SUA's respective claims arising out of Atkins' errors, omissions, and negligence in designing the Degasifier-Clearwell Building.

85.     On repeated occasions, SUA and CDM Smith provided Atkins with the opportunity to participate in the negotiations and settlement discussions with Reynolds and SUA regarding the claims arising out of Atkins' errors, omissions, and negligence in designing the Degasifier-Clearwell Building.

86.     Atkins breached its indemnity obligations by failing to indemnify SUA and CDM Smith from Reynolds' and SUA's respective claims which arose out of Atkins' errors, omissions, and negligence in designing the Degasifier-Clearwell Building.

87.     Atkins failed to fully participate in the negotiations and settlement discussions when it failed to provide a full analysis of the additional time and costs claimed by Reynolds against SUA, and when it failed to provide a full analysis of the first order cost evaluations of SUA's claims against CDM Smith.

88.     Based upon Atkins' refusal to agree to indemnify SUA from Reynolds' claims, and to indemnify CDM Smith from SUA's claims, as well as Atkins' failure to provide a complete evaluation of Reynolds' claims and the first order costs related to the redesign of the Degasifier-Clearwell Building , SUA and CDM Smith mitigated their respective damages by first entering into a reasonable settlement with Reynolds, and then entering into a reasonable settlement with each other.

89.     Reynolds' claims in RFC 41 rev. 5 against SUA, and SUA's claims against CDM Smith that arose from the improper design of the Degasifier-Clearwell Building were caused solely by the errors, omissions or negligence of Atkins.

90.     Based upon Atkins' breach of its obligation to indemnify and hold harmless SUA, and based upon Atkins' breach of its obligation to indemnify and hold harmless CDM Smith, Atkins is responsible to indemnify CDM Smith for the entire amount of SUA's claim against CDM Smith, $671,187.31, plus the additional engineering and construction administration costs incurred by CDM Smith.

91.     As a result of Atkins' breach of its indemnity obligations, CDM Smith was damaged in excess of $1,000,000, the exact amount to be proven at trial.

WHEREFORE, Plaintiff, CDM Smtih, Inc. prays that this Court enter judgment against Defendant, Atkins North America, Inc. for the principal amount owing, plus interest and court costs.

## COUNT III – COMMON LAW INDEMNITY

Plaintiff re-alleges paragraphs 1 through 77, above as if fully set forth herein and further alleges:

92.     Pursuant to Section 6.4.3 of the Final Design Subconsultant Agreement,

SUBCONTRACTOR shall indemnify and save harmless and defend the OWNER, ENGINEER, its agents, servants and employees from and against any claim, demand or cause of action of every name or nature arising out of the error, omission or negligent act of the SUBCONTRACTOR, its subcontractors, agents, servants or employees in the performance of services under this Agreement.  The indemnification provided by this Article 6.4.3 shall in no way be limited by the minimum required insurance identified above.

19

93.     In accordance with the terms of Section 6.4.3 of the Final Design Subconsultant Agreement, Atkins had a duty to indemnify SUA from any claim or demand arising out of Atkins' errors, omissions or negligence.

94.     Atkins failed to indemnify SUA for Reynolds' claims and demands that arose out of Atkins' errors, omissions or negligence in the design of the Degasifier-Clearwell Building.

95.     As a licensed professional engineer, Atkins had a duty to:

A.  Design the Degasifier-Clearwell Building in accordance with applicable codes, the Preliminary Design Report, and within the standard of care of the industry;

B.  Prepare adequate and accurate plans and specifications for contractors to rely upon in performing the Work to construction the Project;

C.  Properly design the Degasifier-Clearwell Building;

D.  Provide construction administration services as required; and

E.  Professionally and objectively carry out is obligations.

96.     Atkins breached its duty to prepare adequate and accurate plans and specifications from which a contractor could properly construct the Degasifier-Clearwell Building.

97.     Atkins breached its duty to design the Degasifier-Clearwell Building in accordance with applicable codes, the Preliminary Design Report, and within the standard of care of the industry.

10104692.1

98.    Atkins breached its duty to properly design the Degasifier-Clearwell Building, and further breached its duty to provide construction administration services by failing to timely and properly correct its improper design of the Degasifier-Clearwell Building -Degasifier Building.

99.    Atkins breached its duty to reimburse SUA for the damages incurred by SUA as a result of Atkins' breaches of duties as a licensed design professional.

100.    Based upon Atkins' failure to discharge its indemnify obligations to SUA, as well as its failure to discharge its obligations as a licensed design professional, CDM Smith was required to discharge Atkins' obligations to SUA, and reimburse SUA for the damages incurred as a result of Atkins' improper design.

101.    CDM Smith's duty to discharge Atkins' liability for the improper design of the Degasifier-Clearwell Building was solely the result of CDM Smith's vicarious, constructive, derivative or technical liability to SUA, as Atkins was solely responsible for the structural design of the Degasifier-Clearwell Building .

102.    CDM Smith is without any fault in the design of the Degasifier-Clearwell Building  structure.

103.    CDM Smith suffered $671,187.31 in damages by discharging the liability that Atkins owed to SUA for the improper design of the Degasifier-Clearwell Building .

WHEREFORE, Plaintiff, CDM Smith, Inc. prays that this Court enter judgment against Defendant, Atkins North America, Inc. for the principal amount owing, plus interest and court costs.

10104692.1

## <u>COUNT IV – PROFESSIONAL NEGLIGENCE</u>

104.    Atkins, acting as a licensed professional engineer, had a duty to:

A.  Design the Degasifier-Clearwell Building in accordance with applicable codes, the Preliminary Design Report, and within the standard of care of the industry;

B.  Prepare plans specifications for contractors to rely upon in performing the Work to construction the Project;

C.  Properly design the Degasifier-Clearwell Building;

D.  Provide construction administration services as required; and

E.  Professionally and objectively carry out is obligations.

105.    Atkins breached its duty to prepare adequate and accurate plans and specifications from which a contractor could properly construct the Degasifier-Clearwell Building.

106.    Atkins breached its duty to design the Degasifier-Clearwell Building in accordance with applicable codes, the Preliminary Design Report, and within the standard of care of the industry.

107.    Atkins breached its duty to properly design the Degasifier-Clearwell Building, and further breached its duty to provide construction administration services by failing to timely and properly correct its improper design of the Degasifier-Clearwell Building.

22

108.   As a direct and proximate result of Atkins' breaches of its professional obligations, CDM Smith was damaged in excess of $1,000,000, the exact amount to be proven at trial.

WHEREFORE, Plaintiff, CDM Smith, Inc. prays that this Court enter judgment against Defendant, Atkins North America, Inc. for the principal amount owing, plus interest and court costs.

> Arnstein & Lehr LLP
> Attorneys for Plaintiff
> Northbridge Centre, Suite 600
> 515 North Flagler Drive
> West Palm Beach, FL 33401
> Telephone:   561-833-9800
> Facsimile:   561-655-5551
> Email:         shsakwa@arnstein.com
>
> s/Stuart H. Sakwa
> _____
> Stuart H. Sakwa
> Florida Bar No.160880